**BREAKSTONE, WHITE-LIEF & GLUCK, P.C.**
Attorneys at Law
Two Center Plaza, Suite 530
Boston, Massachusetts 02108-1906

MARC L. BREAKSTONE
DAVID W. WHITE-LIEF
RONALD E. GLUCK

HEATHER A. ENGMAN

Telephone (617) 723-7676
Facsimile (617) 723-7777
www.bwglaw.com

November 16, 2006

J. Reid Prouty, Esquire
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, DC 20530

Re: Sullivan v. United States of America

Dear Mr. Prouty:

I have been asked to render an opinion concerning the reasonable settlement value of the above referenced case assuming $750,000.00 of liability insurance existed on August 17, 1995

Materials Reviewed

Plaintiff's medical records as follows:

1. Good Samaritan Hospital
2. Eugene Packer, D. C.
3. William Sullivan, M.D.
4. Richard McArdle, M.D.
5. John Messersmith, M.D.
6. Norma Sullivan's Answers to Interrogatories
7. Donald Sullivan's Deposition
8. Norma Sullivan's Deposition
9. Norma Sullivan's medical bills
10. Norma Sullivan's tax return
11. Medical records from Shields MRI

Evidence of Pre-Accident History of Norma Sullivan

On the date of the accident, August 17, 1995, Norma Sullivan was 59 years old. She worked part-time as a house cleaner earning approximately $5,000.00 a year. She suffered a low back injury in approximately 1988 from which she recovered. Prior to this accident, she and her husband, Donald Sullivan, spent significant time together doing things such as taking rides, going out for dinner and taking walks.

Evidence Concerning the Accident

On August 17, 1995 Ms. Sullivan was a passenger in a vehicle operated by her husband, which was struck in the rear by another vehicle. She was wearing a seatbelt. She suffered no direct trauma.

Evidence of Medical Treatment

Ms. Sullivan was taken by ambulance to Good Samaritan Hospital, treated in the emergency room and discharged that day. At the hospital, she complained of neck, chest and back pain. The "final impression" listed in the medical record on the date of the accident was "cervical strain" and the "final diagnosis" was "mild cervical strain and mild lumbar strain".

Ms. Sullivan began treating with a Chiropractor, Eugene Packer, D.C. on August 23, 1995 and made steady improvement. On November 12, 1995 her back pain worsened to a significant degree when she injured it while hanging curtains in her home.

On November 20, 1995 she began treating with orthopedic surgeon William Sullivan, M.D. who had treated Ms. Sullivan for back problems in 1988 which had resolved. Dr. Sullivan's records of November 20, 1995 indicate that Norma Sullivan had a normal orthopedic examination on that date with the exception of limited flexion. He ordered an MRI. Dr. Sullivan noted that Ms. Sullivan told him that since the accident she felt as if she had to urinate all the time. He noted that she was able to sleep through the night.

The MRI took place on December 6, 1995. The findings were degenerative disc disease, disc protrusions and a small left sided disc herniation at L3-4.

Dr. Sullivan's record of December 11, 1995 states that Norma Sullivan told him that some kind of a miracle happened. He stated that her back pain was gone and that she was quite comfortable.

Concerning the bladder issue, tests were performed following which bladder repair surgery was scheduled with Dr. McArdle. In the course of the tests related to the bladder issue a 4 cm. abdominal mass was also seen. Plans were made to correct both conditions in one surgery to take place on January 24, 1996.

At the time of the bladder repair which was performed by Dr. Richard McArdle, the small mass was removed laparoscopically by Dr. Messersmith. Ms. Sullivan was in the hospital from January 23, 1996 through January 26, 1996 for these procedures.

According to Ms. Sullivan's medical records she went back to see Dr. Sullivan on March 11, 1996. His records indicate that she stated she had been fine, having some minor episodes where her back would give out for no apparent reason and then get better. She last saw Dr. Sullivan on March 15, 1996. The doctor recommended that she get a new back brace and see her after that. No records 1996 of further treatment were presented in the case.

## Damages Claimed by the Plaintiff

Plaintiff alleges she suffered cervical and lumbar spine sprains and blunt abdominal trauma resulting in the formation of a calcified intra abdominal mass which required a laporascopic procedure on January 24, 1996. Causation for each of the above injuries has been established. The plaintiff also alleges she suffered a left sided disk herniation at L3-4. No causation has been established on this injury.

Plaintiff includes in her list of medical bills those bills which relate to the bladder repair surgery. As no causation exists on the bladder repair, these medical bills should be subtracted from the total of medical bills.

Plaintiff also alleges that the spinal injuries are permanent. Plaintiff treated for her low back injuries from August 17, 1995 through March 15, 1996. No evidence has been presented which establishes any treatment for said injury beyond that date. There is no medical opinion which states that plaintiff's spinal injuries are permanent.

The plaintiff alleges that her medical bills related to the accident of August 17, 1995 were $17, 522.32.

Loss of consortium: Donald Sullivan claims loss of consortium.

## Plaintiff's Proof of Damages

Neck (cervical) injury: The medical records of Drs. Packer and Sullivan confirm causation between a soft tissue cervical strain injury and the accident of August 17, 1995.

Low back (lumbosacral) injury: The medical records of Drs. Packer and Sullivan confirm causation between a soft tissue lumbar strain injury and the accident of August 17, 1995.

Disk injuries: There is no opinion offered by plaintiff's treating doctors or by any expert witness concerning the causal relationship between any disk injury and the accident of August 17, 1995.

Bladder injury requiring surgery: There is no opinion offered by any of plaintiff's treating physicians or by any expert witness concerning a causal relationship between the August 17, 1995 accident and any bladder injury. Ms. Sullivan states that she did not have the urinary incontinence before the accident of August 17, 1995. Ms. Sullivan's medical records indicate that her first mention to a medical provider of a bladder problem was on November 20, 1995, three months after the accident occurred.

Abdominal mass: Dr. Messersmith, the treating surgeon who removed the abdominal mass, has opined that the small mass was caused by the trauma from the accident of August 17, 1995. No other evidence on this issue exists in the case.

Loss of Consortium: Donald Sullivan testified that he and Norma Sullivan were unable to engage in many of their usual activities, including sexual relations, for a period of six months to one year. This was generally corroborated by Norma Sullivan.

## Value of the Case

Assuming $750,000.00 in liability insurance coverage in 1995, the case would have likely resulted in a negotiated settlement. The plaintiff has made allegations of multiple injuries. The insurance carrier would likely have challenged the proof offered by the plaintiff on several fronts and accepted the proof on others.

It is likely that the insurance carrier would have accepted the mild cervical and lumbar strain allegations. Plaintiff treated for these injuries initially for approximately three months after the accident during which time she was improving. However, on November 12, 1995 she injured her low back while hanging curtains in her home. It was only after this that an MRI was ordered. Prior to the November 12, 1995 injury at home she had no neurological symptoms. Even after the MRI on December 6, 1995 she Ms. Sullivan stated she made a miraculous recovery which was confirmed by the examinations of Dr. Sullivan. The ongoing low back pain following her excellent recovery would likely have been a subject of negotiation between plaintiff's counsel and the insurance adjuster. It is likely that the insurance adjuster would have ultimately paid compensation for the low back pain through the end of her treatment in March of 1996 at a rate of approximately $180.00 per week for this period of time which calculates to approximately $5,040.00.

It is unlikely that the insurance company would have paid compensation for the alleged disk injury at L-3-4 because Ms. Sullivan had a pre-existing back condition, suffered the incident at her home on November 12, 1995, had a great deal of degeneration of her spine on MRI and because there is no opinion provided by the plaintiff establishing causation between the disk problem and the auto accident of August 17, 1995.

Concerning wages, plaintiff told Dr. Sullivan on November 20, 1995 that she had worked for some time after the accident and had stopped working the week before that November 20 visit. While the insurance company would likely have resisted paying any lost wages because Ms. Sullivan did not miss work until after she injured her back at home on November 12, 1995, , it is reasonable to state that the phantom insurance company would ultimately have given in on this point and paid lost wages from mid November 1995, when she went out from work, until she last treated with Dr. Sullivan March 15, 1996. While it is possible that plaintiff was unable to work beyond that date, insurance companies require proof of this allegation from a medical provider and none exists in this case. As Norma Sullivan earned approximately $5,000 per year prior to the accident she would have received compensation of approximately $100.00 per week for approximately twenty weeks of lost wages between mid November 1995 and mid March 1996. This amounts to approximately $2,000.

As there is no causation opinion in the case concerning the stress incontinence which required bladder surgery, there would have been no compensation for that injury or procedure. Although Ms. Sullivan told Dr. Sullivan

that she since the accident she felt as if she had to urinate all the time, he noted in her record that she was able to sleep through the night. While Ms. Sullivan may believe that her urinary incontinence was caused by the accident, an insurance company would have required proof. Plaintiff's counsel obtained proof that the abdominal mass was related to the accident but curiously did not provide proof that the stress incontinence was related. The insurance company would likely not have paid compensation without said proof.

Ms. Sullivan would have received compensation for the removal of the abdominal mass by Dr. Messersmith who provided an opinion that it was related to the accident. It is reasonable to expect that an insurer would have paid $20,000 for pain and suffering related to that procedure and the associated hospitalization, even though it was performed at the same time as the bladder repair.

As there is no medical opinion which states that plaintiff's spinal injuries are permanent, there would have been no compensation paid by the insurer for ongoing lost wages or ongoing pain and suffering.

The value of the loss of consortium claim is often viewed by the insurance industry as ten to twenty per cent of the value of the primary case. That is the amount the phantom carrier likely would have paid in this case.

## Conclusion

It is my opinion with a reasonable degree of certainty that the likely settlement value of the case involving Norma Sullivan's accident of August 17, 1995 is as follows:

| | |
|---|---|
| Pain and suffering: | $25,040.00 |
| Lost wages: | 2,000.00 |
| Medical bills: | 17,552.00* |
| Loss of consortium: | 8,000.00 |
| Total | $52,592.00 |

*minus the amount for medical bills for the bladder repair

RESPECTFULLY SUBMITTED,

RONALD E. GLUCK

REG/jp

BY FACSIMILE 202-514-7969