IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORMA C. SULLIVAN and<br>DONALD E. SULLIVAN,<br><br>Plaintiffs,<br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 99-754 C<br>(Senior Judge Smith) |

DEFENDANT'S PRE-TRIAL MEMORANDUM OF
CONTENTIONS OF FACT AND LAW AND WITNESS AND EXHIBIT LISTS

In accordance with the Court's December 12, 2007 order and pursuant to Appendix A to the Rules of the United States Court of Federal Claims, the United States respectfully submits its memorandum of contentions of fact and law and witness and exhibit lists.

## INTRODUCTION

At trial in this case, plaintiffs will bear the burden of proving their damages caused by TNT Transportation's ("TNT's") breach of its contract with the United States Postal Service ("USPS") that required TNT to carry $750,000 in liability insurance.[1] The evidence will demonstrate that, even if TNT had carried the required $750,000 insurance policy, plaintiffs' ("the Sullivans") recovery in an insurance claim against TNT for an automobile accident would have been, at most, $32,592 greater than the amount that they actually realized.

## STATEMENT OF FACTS

On August 17, 1995, the Sullivans were involved in a motor vehicle accident in Easton,

[1] We respectfully disagree with the Court's determination that the United States is liable to the Sullivans for damages arising from TNT's breach of its contract with the United States. Nevertheless, and without waiving any right to later appeal the Court's liability determination, we recognize that determining damages from said breach is appropriate at this stage of the litigation.

Massachusetts. Their car had been struck in the rear by a truck operated by TNT, and Mrs. Sullivan was taken to a hospital. At the hospital, Mrs. Sullivan complained of neck, chest, and back strain. When she was released later the same day, the hospital listed her "final diagnosis" as "mild cervical strain" and "mild lumbar strain."

Approximately two-and-a-half months later, Mrs. Sullivan began seeing a chiropractor, complaining of stiffness in her back and neck. On November 20, 1995, she saw an orthopedic surgeon. Mrs. Sullivan had been treated by the same orthopedic office in 1988 for low back pain, but had reported that it had been resolved. On December 11, 1995, she reported to her orthopedist that a "miracle happened" and that her back was much better.

Mrs. Sullivan also complained about frequency in urination and saw a urologist for the problem. A computerized tomography (CT) scan found that she had a small calcified mass in her abdominal region. In January, 1996, Mrs. Sullivan underwent surgery to correct stress incontinence. During the surgery, the abdominal mass was also removed. Mrs. Sullivan recovered from the surgery with no complications.

Mrs. Sullivan stopped seeing her orthopedist for several months after her December 1995 report that her back was much better. She saw her orthopedist again, on March 11, 1996, complaining that her back pain had returned. She saw her orthopedist for a last documented time on March 15, 1996, and he recommended that she obtain a back brace and return after it became available. Mrs. Sullivan did not return to her orthopedist after the March 15, 1996 appointment, and there is no record of her seeing a physician for her back problems again before 2006.

On July 14, 1996, in preparation for litigation against TNT for the accident, the Sullivans obtained from Dr. Messersmith a letter in which he opined that the calcified mass was caused by

the automobile accident. Dr. Messersmith did not make any assertions regarding causation for Mrs. Sullivan's bladder problems.

The Sullivans brought suit against TNT for damages caused by the auto accident. They settled the suit for the limits of the insurance policy upon the TNT vehicle: $20,000.

In preparation for this trial, the Sullivans have obtained the expert testimony of Robert Creedon. Mr. Creedon is an attorney who has opined that the Sullivans could have settled their case, within two years of the accident, for $259,522, if the limits of the insurance had been $750,000. Mr. Creedon further opined that, as of August 2007, the Sullivans would have collected an additional $218,000 because of Massachusetts post-judgment interest of 12 percent per annum.

The Government obtained the testimony of its own expert, Ronald Gluck. Mr. Gluck has been practicing law as a personal injury lawyer in the Commonwealth of Massachusetts for 27 years. Mr. Gluck's analysis found that, at the time of the insurance claim in 1996, there was no evidence presented demonstrating that Mrs. Sullivan had suffered a permanent spinal injury. Accordingly, the greater part of Mr. Creedon's asserted damages were unsupported and would not have been paid by an insurance company. Mr. Gluck's analysis, then, found that the Sullivans would have likely collected, at most, $52,592 from an insurance company.

Subsequent to receiving Mr. Gluck's report, the Sullivans produced several additional sets of medical records. Although these were produced after discovery had closed, the Court permitted their consideration, but also allowed the Government to obtain additional expert opinion. We thus consulted Dr. Hyman Glick, an experienced orthopedic surgeon. Dr. Glick examined both the old and the new medical reports provided by the Sullivans. He determined

that the motor vehicle accident temporarily aggravated Mrs. Sullivan's pre-existing condition of degenerative disc disease, but that it caused no permanent disability.

Mr. Gluck has reviewed Dr. Glick's report and determined that it supports his prior conclusions regarding damages.

ARGUMENT

The proper measure of damages in this case is the difference in the money that the Sullivans would have received from an insurance company that had insured TNT for $750,000 and the amount that was actually available to them. Although this number is necessarily speculative (thus, plaintiffs should receive no recovery), the best estimate for it is an order or magnitude less than what the Sullivans claim. Moreover, since the hypothetical insurance company would have made its payment upon settlement, there is no basis for awarding pre-judgment interest to the Sullivans.

ISSUE I: What Damages Should Be Assessed Against The Government

A. Contentions of Law Regarding Damages

"The remedy for breach of contract is damages sufficient to place the injured party in as good a position as it would have been if the breaching party had fully performed." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005) (citation omitted). The Sullivans have the burden to establish "reasonable certainty" as to each item within their damages claims. Wells Fargo Bank v. United States, 88 F.3d 1012, 1023 (Fed. Cir. 1996); see Restatement (Second) of Contracts § 352 cmt. a ("[a] party cannot recover damages for breach of a contract for loss beyond the amount that the evidence permits to be established with reasonable certainty"). Indeed, "recovery for speculative damages is precluded." Indiana Michigan, 422

F.3d at 1373 (citation omitted). Thus, the measure of damages should be the proveable (i.e., non-speculative) difference between the position that the Sullivans would have had if TNT had carried a $750,000 insurance policy and the position that the Sullivans were in as a result of TNT's truck being insured for $20,000.

B. Contentions of Fact Regarding Damages

The bottom-line fact in this case is that the motor vehicle accident here did not involve life-changing injuries to the Sullivans, thus their claims for damages are vastly inflated. Before the accident, Mrs. Sullivan suffered (as many persons her age do) degenerative disc disease, and the accident merely temporarily aggravated it. By mid-December 1995, the effects of that aggravation had receded and her future back problems were all a result of the pre-existing disease. Mr. Creedon's generous award of 15 percent disability to Mrs. Sullivan (an award with no quantifiable basis, whatsoever) would never have been agreed upon by any reasonable insurance company and we do not expect that a jury would have come to any different conclusion.

The more reasonable figure for damages comes from Mr. Gluck, who has judged that a reasonable insurance company would have paid $52,592 at most. Indeed, this figure is on the high side because Mr. Gluck has assumed that the insurance would have covered the abdominal surgery which had its main purpose to address the stress incontinence that was a consequence of aging, not the accident.

Because the Sullivans collected $20,000 from the truck rental company's insurance company, their recovery here should be diminished by that amount. Moreover, because they will not demonstrate that the truck driver and TNT had no recoverable assets, they will not be able to

prove what portion of the remaining $32,592 was otherwise unrecoverable without the greater insurance limits. Thus, they should be awarded nothing.

ISSUE 2: Whether The United States Is Liable For Pre-Judgment Interest

As a matter of law, the Sullivans are not entitled to pre-judgment interest. See Library of Cong. v. Shaw, 478 U.S. 310, 314-15 (1986) (holding that "interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress."); Orlando Food Corp. v. United States, 423 F.3d 1318, 1320 (Fed. Cir. 2005) (explaining that, "[a]s a general rule, the United States is immune from claims seeking an award of interest . . . The only exception to this general rule that is relevant in this case is where Congress has expressly provided for interest.") (citation omitted). Accordingly, the Sullivans' demand to be paid the Massachusetts statutory interest rate of 12 percent per annum, subsequent to the hypothetical payment by a hypothetical insurance company is precluded by law.

THE GOVERNMENT'S LIST OF WITNESSES

At trial, the Government expects to call the following witness, to testify as follows:

Mr. Ronald Gluck. Mr. Gluck is the Government's expert witness. We anticipate that he will testify consistent with his written opinion, which has already been provided to the Court. We note that, after plaintiffs submitted additional medical evidence, following the close of discovery, Mr. Gluck had the evidence reviewed by a physician, Dr. Hyman Glick. Mr. Gluck considered Dr. Glick's opinion and his opinion remained the same.

In addition to Mr. Gluck, we reserve the right to call those who are upon plaintiffs' witness list.

## THE GOVERNMENT'S EXHIBIT LIST

1. Report of Mr. Ronald Gluck, dated November 16, 2007.
2. Report of Dr. Hyman Glick, dated November 1, 2007.
3. Supplemental letter from Mr. Ronald Gluck, dated November 8, 2007.
4. Any and all exhibits produced by plaintiff and not objected to.

## CONCLUSION

For all of the above reasons, the Government respectfully requests that the Court find that the Sullivans' damages are too speculative to be assessed against the United States or, in the alternative, that such damages do not exceed $32,592.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7586
Fax: (202) 514-7969

January 7, 2008

Attorneys for Defendant